IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SANDRA LEE HAMBROOK,                  ) Civ. No. 14-00132 ACK-BMK
individually, as Personal             )
Representative of the Estate of       )
William Joseph Savage, deceased,      )
and as Personal Representative        )
for the benefit of Chelsea            )
Savage and Nicolas Savage,            )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )
                                      )
JAY J. SMITH; DENNIS A. McCREA;       )
HAWAIIAN SCUBA SHACK S-22840;         )
PADI AMERICAS, INC. and PADI          )
WORLDWIDE CORPORATION, both dba       )
Professional Association of           )
Diving Instructors,                   )
                                      )
          Defendants.                 )
_____      )

### ORDER GRANTING DEFENDANT PADI'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT

For the following reasons, the Court hereby GRANTS

Defendant PADI Americas, Inc. and PADI Worldwide Corporation,

both dba Professional Association of Diving Instructors' Motion

for Partial Summary Judgment (Doc. No. 59,) and DENIES

Plaintiff's Counter-Motion for Partial Summary Judgment against

the PADI defendants.[1/] (Doc. No. 99). The Court grants judgment

_____

[1/] It is the Court's understanding, and apparently the other
defendants' understanding as well, that the Counter-Motion seeks
                                              (continued...)

in the PADI Defendants' favor as to Counts I, III, and IV of the First Amended Complaint.

## FACTUAL BACKGROUND[2]

This is an admiralty case arising out of a diving accident that occurred on April 11, 2012. On that date, Plaintiff Sandra Lee Hambrook, her husband William Joseph Savage, and their children Chelsea Savage and Nicolas Savage went on a recreational scuba diving excursion departing from Honokohau Harbor in Kona, Hawaii. (PADI CSF ¶ 1; Doc. No. 89 (First Amended Compl.) ¶¶ 9-12.) During the excursion, William Savage died by drowning. (PADI CSF ¶ 2; Pl.'s CSF ¶ 2.)

Defendant Jay J. Smith was the dive guide on the scuba excursion, and Defendant Dennis McCrea was a co-Captain on the dive vessel, motor vessel HA-1639-CP. Defendants Smith and McCrea were both members of the Professional Association of Diving Instructors, and were certified PADI divemasters. (PADI CSF ¶ 9, Hornsby Decl. ¶ 6; Pl.'s CSF ¶ 9, Ex. E (Smith Depo.) at 35-37.) Defendant Smith has been a professional dive guide on the Big Island since 1997. (PADI Reply CSF, Ex. 2 (Smith Depo.) at 19.) Defendant PADI Worldwide Corporation is the parent corporation of

---

[1] (...continued)
judgment only as to the PADI defendants.

[2] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

PADI America, Inc., which owns the name Professional Association of Diving Instructors (Defendants PADI Worldwide and PADI America are collectively referred to herein as "PADI"). (PADI CSF, ¶ 4.) Defendants Smith and McCrea ran their scuba excursions out of Defendant Hawaiian Scuba Shack S-22840 ("HSS"), a Hawaii corporation owned and operated by Defendant Smith. HSS was an approved PADI Dive Center at the time of the incident. (PAD CSF ¶ 10, Hornsby Decl. ¶ 6.)

PADI is a dive training organization and an association for diving instructors and dive centers that develops and designs training courses and related educational materials for recreational scuba diving. (PADI CSF ¶ 7; Pl.'s CSF ¶ 7.) To become a PADI member, an individual must agree to abide by PADI training standards, agree to be subjected to PADI's quality assurance review, sign the PADI Membership Agreement, and pay PADI an annual membership fee. (Id.) In return, PADI members are entitled to purchase PADI course materials for resale to their customers, and to use the PADI logos and trademarks to market their services to the public. (PADI CSF, ¶ 8; Pl.'s CSF ¶ 8.) Defendant Smith became an individual PADI member in 1999 and was a member at the time of the accident that gave rise to this litigation. (PADI CSF ¶ 9, Hornsby Decl. ¶ 6; Pl.'s CSF ¶ 9, Ex. E (Smith Depo.) at 35-37.) HSS was approved as a PADI Dive Center member on February 21, 2012. (PADI CSF ¶ 10; Pl.'s CSF ¶ 10.)

At the time of the accident at issue, Plaintiff and her husband and children were on a two-week vacation in Kona on the Big Island of Hawaii. (Pl.'s CSF, Ex. D (Hambrook Depo.) at 83.) Plaintiff, Mr. Savage, and Nicolas Savage had all previously been PADI certified as open water scuba divers in 2010. (PADI Reply CSF, Ex. 3.) Plaintiff testified in her deposition that she and her husband selected HSS for their recreational diving during their vacation in Hawaii because it was a PADI certified shop, and their previous dive instructors had recommended that they select a PADI Dive Shop. (Pl.'s CSF, Ex. D (Hambrook Depo.) at 84-85; Hambrook Decl. ¶¶ 2-3.)

On April 10, 2012, Mr. Savage and Nicolas went to HSS and arranged to go on a two-dive trip with Defendant Smith. (PADI Reply CSF, Ex. 1 (Hambrook Depo.) at 104-05.) Plaintiff and Chelsea did not join them on the dive on that day because Plaintiff had a cold. (Id. at 106-07.) Plaintiff testified in her deposition that Mr. Savage told her that the dives had been "uninteresting" and that he had had some "anxiety" about regulating his breathing, but that Mr. Smith had "spent some time with him helping him" and that "he was fine after that." (Id. at 112.) The two dives were otherwise uneventful and Mr. Savage did not raise any concerns about Mr. Smith or anyone else from HSS. (Id. at 113.)

The following day, April 11, 2012, Plaintiff and her

4

family returned to HSS for the dive excursion at issue in the instant case. Plaintiff stated during her deposition that, when arranging for the dive excursion, she and her husband told Mr. Smith that they were "amateur divers" without much experience, and that they wanted to do supervised, safe, easy dives. (Pl.'s CSF, Ex. D (Hambrook Depo.) at 87-88.) Prior to embarking on the dive excursion, Plaintiff, Mr. Savage, and their two children each executed a document titled "Boat Travel and Scuba Diving Voluntary Release, Waiver, and Assumption of the Risk." (PADI CSF, Exs. E-H (collectively, the releases are referred to as the "Release").) Plaintiff, her husband, and Nicolas had previously signed similar waivers when taking diving courses in Calgary and Maui. (PADI Reply CSF, Exs. 3 & 4.)

On April 11, 2012, Defendant Smith took the family on a dive excursion to a dive site known as "Skull Cave/Suck 'Em Up." (PADI Reply CSF, Ex. 1 (Hambrook Depo.) at 154-55.) Mr. Smith stated during his deposition that he believed this location was appropriate based on the weather and water conditions at the time. (<u>Id.</u>, Ex. 2 (Smith Depo.) at 176-78.) During the dive on April 11, a somewhat larger wave set came through where Mr. Smith and Mr. Savage were diving, and Mr. Smith saw Mr. Savage pass over him with a wave. (<u>Id.</u> at 252.) Mr. Smith testified that he then surfaced to try to assist Mr. Savage, but Mr. Savage was out of reach by that point. (<u>Id.</u> at 253.) At this time, Plaintiff and

Nicolas were already swimming back to the boat (Chelsea did not dive and remained on the boat during the entire excursion). (<u>Id.</u>)

Plaintiff asserts that Mr. Savage was swept onto some rocks at the shoreline and lost consciousness; however, the autopsy revealed that there were no physical injuries to Mr. Savage other than a small, 1-cm laceration on the back of his head. (PADI Reply CSF, Ex. 5.) Mr. Smith opined that Mr. Savage drowned because he stopped using his regulator to breath air from his tank. (<u>Id.</u>, Ex. 2 (Smith Depo.) at 251.) What is clear is that Mr. Savage somehow lost consciousness, after which Mr. Smith brought him back to the vessel, where his wife and children were waiting, and Defendant McCrea performed CPR to no avail. Mr. Savage died of salt water drowning. (<u>Id.</u>; PADI Reply CSF, Ex. 5.) Plaintiff brought the instant action thereafter, asserting, *inter alia*, that Mr. Smith and Mr. McCrea were negligent in their selection of the dive location, their supervision of the dive, and in their resuscitation efforts.

## PROCEDURAL BACKGROUND

On March 14, 2014, Plaintiff Sandra Lee Hambrook filed her original Verified Complaint on behalf of herself, and as personal representative of the Estate of William J. Savage, and as personal representative for the benefit of Chelsea and Nicolas Savage, against Defendant Smith, HSS, and PADI, in personam, and the vessel, in rem. (Doc. No. 1.) Defendant PADI filed the

6

instant Motion for Partial Summary Judgment on Counts II and III of Plaintiff's Complaint, along with a concise statement of facts and supporting exhibits, on February 18, 2015. (Doc. Nos. 59 & 60.) Thereafter, Plaintiff voluntarily dismissed her claims against the vessel in rem, and was granted permission to file an amended complaint.

Plaintiff filed her First Amended Complaint on April 7, 2015 against Defendants Smith, McCrea, HSS, and PADI Worldwide Corporation and PADI Americas, Inc., both dba Professional Association of Diving Instructors.[3/] (Doc. No. 89 ("FAC").) In the First Amended Complaint, Plaintiff brings the following claims: (1) negligence as against all defendants (Count I); (2) gross negligence as against all defendants (Count II); (3) vicarious liability as against Defendant PADI for the acts of the other defendants on a theory of apparent agency and agency by estoppel (Count III); and vicarious liability as against Defendant PADI on a theory of maritime joint venture (Count IV).

On April 17, 2015, pursuant to a stipulation between the parties, Defendant PADI filed a supplemental memorandum in support of its Motion for Partial Summary Judgment, explaining that its motion was still applicable notwithstanding the filing

---

[3/] Defendant PADI Americas, Inc. owns the trade name Professional Association of Diving Instructors, and Defendant PADI Worldwide Corporation is the parent company of PADI Americas.

of the First Amended Complaint. (Doc. No. 97.) On May 5, 2015,
Plaintiff filed her Memorandum in Opposition and Counter-Motion
for Partial Summary Judgment, along with a concise statement of
facts and supporting exhibits. (Doc. No. 99 & 100.) On the same
day, Defendants Jay J. Smith and Hawaiian Scuba Shack filed a
statement of no position regarding the motion. (Doc. No. 102.)
PADI filed its Reply in Support of its Motion for Partial Summary
Judgment and in Opposition to Plaintiff's Counter-Motion, along
with a concise statement of facts and exhibits, on May 12, 2015.
(Doc. Nos. 107 & 108.) Plaintiff filed her reply in support of
the counter-motion on May 19, 2015. (Doc. No. 113.) A hearing on
the motions was held on May 29, 2015.

## **STANDARD**

Summary judgment is appropriate when a "movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). The central issue is "whether the evidence presents a
sufficient disagreement to require submission to a jury or
whether it is so one-sided that one party must prevail as a
matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
251–52 (1986).

The moving party bears the initial burden of
demonstrating the absence of a genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that

burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 587.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 585. "[T]he requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 247–48 (emphasis in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." Hernandez

<u>v. Spacelabs Med. Inc.</u>, 343 F.3d 1107, 1112 (9th Cir. 2003).

**DISCUSSION**

In its motion, PADI seeks summary judgment as to the vicarious liability claims against it (Counts II and III of Plaintiff's original Complaint). In its supplemental memorandum in support of the motion, PADI appears to assert that judgment should also be entered in its favor as to the negligence claim Plaintiff added in the First Amended Complaint (Count I of the First Amended Complaint).[4/] Plaintiff asserts that she is entitled to partial summary judgment as to the enforceability of the Release signed prior to the scuba expedition, and that questions of fact preclude summary judgment as to her remaining claims against PADI. Because PADI asserts that the liability releases signed by Plaintiff and her family entitle PADI to dismissal of all claims against it except for the gross negligence claim, the Court will first address the enforceability of the Release.

**I.   Enforceability of the Liability Release**

As an initial matter, the Court must address the validity of the Release signed by Plaintiff and her family prior

---

[4/] While PADI's briefing on this is somewhat unclear, counsel for PADI confirmed at the hearing on the instant motions that PADI is seeking judgment as to Counts I, III, and IV of Plaintiff's First Amended Complaint, and Plaintiff's counsel stated that he had no objection to the Court considering PADI's challenges to these counts.

to embarking on the scuba diving excursion. PADI asserts that the Release is valid as to it and therefore releases it from liability for Plaintiff's claims other than gross negligence. (See Reply at 4.) In her Counter-Motion for Partial Summary Judgment, Plaintiff asserts that the Release is unenforceable.

The Release states, in relevant part, that the signing party releases, among others, Defendants Smith and McCrea, the vessel, and PADI "from all liability and responsibility for personal injury, property damage or wrongful death, however caused, including, but not limited to, product liability or the negligence of the released parties, whether passive or active." (PADI CSF, Ex. E at 1.) The Release states in the preceding paragraph that the signing party

> understand[s] the hazards of scuba diving
> including those hazards occurring during boat
> travel to and from the dive site[,including] air
> expansion injuries, drowning, decompression
> sickness, slipping or falling while on board,
> being cut or struck by a boat while in the water,
> injuries while getting on or off a boat, and other
> perils of the sea.

(Id.) Plaintiff, Mr. Savage, and their children each signed the Release, acknowledging that they "expressly assume" the enumerated risks. (Id.)

Plaintiff asserts that the Release is invalid under admiralty law and Hawaii state law. The Court addresses each

argument in turn.[5/]

---

[5/] The Court notes that Plaintiff also asserts that the
Release is invalid because it contains an assumption of the risk
clause (a defense unavailable in admiralty). (Opp'n at 6-7.)
Plaintiff is correct that, generally, the common law defense of
assumption of the risk is unavailable in maritime cases involving
personal injury. See, e.g., Simeonoff v. Hiner, 249 F.3d 883, 887
(9th Cir. 2001) ("[A]ssumption of risk has no place in maritime
law."). Assumption of risk and waiver of liability are two
different affirmative defenses, however, and are addressed
separately by courts. See, e.g., Cobb v. Aramark Sports and Ent.
Svcs., LLC, 933 F. Supp. 2d 1295, 1298 (D. Nevada 2013); Roane v.
Greenwich Swim Committee, 330 F. Supp. 2d 306, 322-23 (S.D. N.Y.
2004). Here, PADI is raising the defense of express waiver, but
is not attempting to raise any defense based upon assumption of
the risk. Moreover, even assuming the assumption of risk clause
were to render the Release void, the Court finds that that clause
is severable. In Courtney v. Pacific Adventures, Inc., this
district court found that a release that limited liability for
injuries "caused by negligence or gross negligence or otherwise"
was void in its entirety. 5 F. Supp. 2d 874, 880 (D. Haw. 1998).
Noting that a release from liability for gross negligence is void
as against public policy in Hawaii, and that the waiver at issue
attempted "in one sentence" to exempt the defendant from all
claims against him without any manifestation of an intent to
sever some claims from others, the court found the waiver invalid
in its entirety. See id. at 882 (citing Farina v. Mt. Bachelor,
Inc., 66 F.3d 233, 235 (9th Cir. 1995)). Here, however, the Court
finds the Release to be distinguishable from the one struck down
in Pacific Adventures. The assumption of risk language in the
Release in this case is set forth in an entirely separate
paragraph from the negligence waiver language. (See PADI CSF, Ex.
E.) Indeed, the negligence waiver and assumption of risk clause
each function entirely independent from the other, and can stand
alone. Thus, were the assumption of the risk language to be
excised, the essential purpose of the Release would remain
unchanged. The Court is therefore satisfied that the Release is
severable and, therefore, valid notwithstanding its inclusion of
the assumption of risk clause. See Pacific Adventures, 5 F. Supp.
2d at 882 ("[I]t is well settled under ordinary contract law . .
. that a partially illegal contract may be upheld if the illegal
portion is severable from the part which is legal." 5 F. Supp. 2d
at 882; Ai v. Frank Huff Agency, Ltd., 607 P.2d 1304, 1313 (Haw.
1980), overruled on other grounds by Robert's Hawaii Sch. Bus,
Inc. v. Laupahoehoe Transp. Co., 982 P.2d 853 (Haw. 1999)
(continued...)

**A.  Release Validity Under Admiralty Law**

First, Plaintiff argues that the Release is invalid
under admiralty law. Specifically, Plaintiff asserts that 46
U.S.C. § 30509 (formerly Section 183c) bars the Release. Section
183c provides:

> It shall be unlawful for the manager, agent,
> master, or owner of any vessel transporting
> passengers between ports of the United States or
> between any such port and a foreign port to insert
> in any rule, regulation, contract, or agreement
> any provision or limitation (1) purporting, in the
> event of loss of life or bodily injury arising
> from the negligence or fault of such owner or his
> servants, to relieve such owner, master, or agent
> from liability, or from liability beyond any
> stipulated amount, for such loss or injury, or (2)
> purporting in such event to lessen, weaken, or
> avoid the right of any claimant to a trial by
> court of competent jurisdiction on the question of
> liability for such loss or injury, or the measure
> of damages therefor. All such provisions or
> limitations contained in any such rule,
> regulation, contract, or agreement are declared to
> be against public policy and shall be null and
> void and of no effect.

This district court has previously applied Section 183c
to invalidate a release for personal injuries in the context of a
recreational scuba diving excursion. See Pacific Adventures, 5 F.
Supp. 2d at 880.

PADI nevertheless disputes Section 183c's application
to the instant case, arguing that admiralty jurisdiction does not

---

[5]/(...continued)
(stating that an unenforceable provision is severable from the
contract as a whole if it may "be excised . . . without doing
violence to [the contract's] essential objects.").

apply here.[6/] The Court disagrees. To determine whether there is

admiralty jurisdiction under 28 U.S.C. § 1333, the court must

consider (1) whether the tort occurred on navigable water, and

(2) whether the incident has a "potentially disruptive impact on

maritime commerce" and the general character of the activity

giving rise to the incident bears a "substantial relationship to

traditional maritime activity." Jerome B. Grubert, Inc. v. Great

Lakes Dredge & Dock Co., 513 U.S. 527, 532-34 (1995). There is no

dispute that the accident here occurred in navigable waters. (See

Reply at 10.) Thus, PADI disputes only the second prong of the

test.

Generally, there is a substantial relationship to

traditional maritime activity "when at least one alleged

tortfeasor was engaging in activity substantially related to

traditional maritime activity and such activity is claimed to

have been a proximate cause of the incident." McClenahan v.

Paradise Cruises, Ltd., 888 F. Supp. 120, 122 (D. Haw. 1995). In

finding the second prong satisfied in Pacific Adventures, the

court concluded that the plaintiff's claims in that case did not

relate solely to scuba diving, but instead involved the operation

or maintenance of a vessel. 5 F. Supp. 2d at 880. Specifically,

---

[6/] PADI concedes that, even if there is no admiralty
jurisdiction, the Court nevertheless has diversity jurisdiction
over the instant matter, as Plaintiffs are Canadian citizens.
(Reply at 11.)

14

the court noted that the plaintiff's allegations included, *inter alia*, an accident with a moving vessel, and claims that defendants failed to respond adequately to an emergency at sea or to properly render first aid aboard the vessel. Id. at 877-78, 880. Because these allegations involved the operation of a vessel and the failure to administer first aid, "activities that establish a substantial relationship with traditional maritime activity," the Pacific Adventures court found that admiralty jurisdiction applied. Id. at 880 (citing In the Matter of the Complaint of Kanoa, Inc., 872 F. Supp. 740, 745 & n3 (D. Haw. 1994) (stating that admiralty jurisdiction governs an allegation that a crew failed to administer proper first aid) (overruled on other grounds)).

Here, as in Pacific Adventures, Plaintiff's claims include allegations that the Defendants' resuscitation efforts, including their failure to use available "emergency breathing oxygen and delivery systems" on board the vessel, were negligent. (FAC ¶¶ 30, 42.) Because the administration of first aid at sea has been found to be a traditional maritime activity, the second prong of the test for admiralty jurisdiction is satisfied here. See In re Kanoa, 87 F. Supp. at 745 & n.3; Pacific Adventures, 5 F. Supp. 2d at 880. As discussed above, the parties do not dispute that the incident at issue occurred in navigable waters. It therefore appears that admiralty jurisdiction and, thus,

Section 183c properly apply to this action.

As noted above, Section 183c generally bars releases of liability for personal injuries arising out of negligence in admiralty cases. Nevertheless, PADI asserts that Section 183c does not invalidate the Release in this case as to it because Section 183c applies only to contracts with the owners or agents of owners of vessels, and PADI is not the owner of the vessel, or an agent of the vessel owner here. (Supp. Mem. at 5.)

The parties do not appear to dispute that Defendants Smith and HSS are the owners of the subject vessel. (Id.; PADI CSF ¶ 19; FAC ¶ 9.) Moreover, Plaintiff does not assert that PADI is an agent of Defendants Smith and HSS (indeed, Plaintiff asserts in Count III of the First Amended Complaint that Defendants Smith and HSS were apparent agents of PADI (FAC ¶¶ 53-64)). In order to establish an agency relationship for purposes of Section 183c, Plaintiff must show that the principals (Defendants Smith and HCC) exercise "significant control" over PADI's activities, and that PADI is engaged in conducting the business of the principals. Pacific Adventures, 5 F. Supp. 2d at 880-81. Here, there are no allegations, let alone supporting evidence, suggesting that Defendants Smith and HSS exercise any control over the operations of PADI, or that PADI is somehow engaged in conducting business on behalf of Defendants Smith and HSS. Thus, the Court finds that PADI is not an agent of the

vessel or vessel owner such that Section 183c applies to invalidate the Release as to PADI.[7/]

**B.    Validity of the Release Under Hawaii State Law**

Finding that Section 183c does not apply to invalidate the Release as to PADI, the Court turns next to Plaintiff's argument that the Release is invalid under Hawaii law.[8/] PADI

---

[7/] Plaintiff argues, however, that PADI is "at best a third-party beneficiary to the Release" and, thus, cannot enforce it to a greater extent than the actual parties to the contract (Defendants Smith and HSS). (Opp'n at 10-11.) While it appears that Plaintiff is correct that Section 183c would invalidate the Release as to claims brought against Defendants Smith and HSS, as owners and operators of the vessel, there is no support for Plaintiff's contention that PADI is not an equal named, direct beneficiary of the Release. The Release has a large PADI logo on the top of the first page, and clearly states that the signer is releasing liability as to "International PADI, Inc." and "its affiliate [and] subsidiary corporations," in addition to the other listed parties. (PADI CSF, Ex. E.) The fact that PADI has not signed the document is of no import: none of the defendants actually signed the Release and liability releases for recreational activities are generally signed only by the releasing party. Thus, notwithstanding Plaintiff's arguments to the contrary, on its face the Release is clearly made as between Plaintiff and Defendants Smith, McCrea, HSS, and PADI.

[8/] Notwithstanding the Court's conclusion that admiralty jurisdiction applies in the instant suit, the Court may nevertheless apply Hawaii law in its analysis of the liability waiver, to the extent Hawaii law does not conflict with general maritime law. Generally, "[w]ith admiralty jurisdiction . . . comes the application of substantive admiralty law." <u>Yamaha Motor Corp., U.S.A., v. Calhoun</u>, 516 U.S. 199, 206 (1996) (citation omitted). Nevertheless, the exercise of admiralty jurisdiction "does not result in automatic displacement of state law." <u>Id.</u> Thus, the United States Supreme Court in <u>Calhoun</u> stated that some state regulation is still permissible in the context of admiralty law. <u>Id.</u> Since <u>Calhoun</u>, courts have generally found that state laws that do not conflict with general maritime law may be applied in the context of admiralty jurisdiction. <u>See</u> <u>Hawaii</u>
(continued...)

counters that the Release is enforceable under Hawaii law pursuant to the Hawaii Supreme Court's decision in <u>Courbat v. Dahana Ranch</u>, 141 P.3d 427, 437-38 (Haw. 2006).

In <u>Courbat</u>, the Hawaii Supreme Court noted that, generally, "one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." 141 P.3d at 437-38. Further "parties are permitted to make exculpatory contracts so long as they are knowingly and willingly made and free from fraud. No public policy exists to prevent such contracts." <u>Id.</u> (alterations and quotation marks omitted). Noting that such agreements are nevertheless disfavored, the <u>Courbat</u> court reiterated the general rule that "exculpatory clauses will be held void if the agreement is (1)

---

[8]/(...continued)
<u>Stevedores, Inc. v. Island Cement, LLC</u>, Civ. No. 09-00250 DAE-BMK, 2009 WL 3681875, at *4 (D. Haw. Nov. 3, 2009) ("Because Hawaii's assumpsit statute does not conflict with general maritime law, Haw. Rev. Stat. § 607-14 applies here under the 'maritime but local' doctrine."); 17A James Wm. Moore, et al., Moore's Federal Practice ¶ 124.46 (3d ed. 2009) (state law applies if not in conflict with general maritime law (citing <u>Calhoun</u>, 516 U.S. at 215-16)). Here, there is no conflict between general maritime law and the Hawaii statute at issue. Specifically, and as discussed in more detail below, Hawaii Revised Statutes section 663-1.54, titled "recreational activity liability," prohibits any waiver of liability for negligence against the owner or operator of a business providing recreational activities in the state. As discussed above, Section 183c similarly bars liability releases for negligence in the context of admiralty cases. <u>See</u> 46 U.S.C. § 30509. Thus, no conflict exists between the Hawaii statute and general maritime law. The Court therefore concludes that it is appropriate to consider Hawaii law, notwithstanding the Court's exercise of admiralty jurisdiction in this case.

violative of a statute, (2) contrary to a substantial public interest, or (3) gained through inequality of bargaining power." Id. (alterations and citations omitted).

Here, Plaintiff asserts that the Release violates a statute - Hawaii Revised Statutes section 663-1.54, titled "recreational activity liability." Section 663-1.54 provides:

> (a) Any person who owns or operates a business providing recreational activities to the public, such as, without limitation, scuba or skin diving, sky diving, bicycle tours, and mountain climbing, shall exercise reasonable care to ensure the safety of patrons and the public, and shall be liable for damages resulting from negligent acts or omissions of the person which cause injury.
>
> (b) Notwithstanding subsection (a), owners and operators of recreational activities shall not be liable for damages for injuries to a patron resulting from inherent risks associated with the recreational activity if the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks. No waiver shall be valid unless:
>
> (1) The owner or operator first provides full disclosure of the inherent risks associated with the recreational activity; and
>
> (2) The owner or operator takes reasonable steps to ensure that each patron is physically able to participate in the activity and is given the necessary instruction to participate in the activity safely.
>
> (c) The determination of whether a risk is inherent or not is for the trier of fact. As used in this section an "inherent risk":
>
> (1) Is a danger that a reasonable person would understand to be associated with the activity by

19

the very nature of the activity engaged in;

(2) Is a danger that a reasonable person would understand to exist despite the owner or operator's exercise of reasonable care to eliminate or minimize the danger, and is generally beyond the control of the owner or operator; and

(3) Does not result from the negligence, gross negligence, or wanton act or omission of the owner or operator.

The Standing Committee that drafted Section 663-1.54 explained its purpose as follows:

Your Committee finds that this measure is necessary to more clearly define the liability of providers of commercial recreational activities by statutorily invalidating inherent risk waivers signed by the participants. Your committee further finds that these inherent risk waivers require providers to disclose known risks to the participant, but these waivers do not extend immunity to providers for damages resulting from negligence. Thus, it is the intent of your Committee that this clarification in the law will appropriately reduce frivolous suits without increasing risks to participants.

Haw. Stand. Comm. Rep. No. 1537, 1997 Senate Journal, at 1476;

see also King v. CJM Country Stables, 315 F. Supp. 2d 1061, 1067

(D. Haw. 2004) (providing detailed analysis of legislative

history of § 663-1.54). Thus, Section 663-1.54 precludes any

waiver of liability for negligence against the owner or operator

of a business providing recreational activities, including scuba

diving excursions, and only permits waivers for damages resulting

from "inherent risks" that have been fully disclosed to the

customer. See King, 315 F. Supp. 2d at 1067. Moreover, pursuant

to Section 663-1.54(c), "[t]he determination of whether a risk is inherent or not is for the trier of fact," meaning the Court cannot determine on summary judgment whether a written release constitutes a valid waiver of liability. See id. (determining that § 663-1.54(c)'s "statutorily-imposed genuine issue of fact precludes summary judgment as a matter of law").

PADI argues that the Court can rule as a matter of law that Section 663.1-54 is not effective to invalidate the Release as to it because it is not the "owner or operator" of "a business providing recreational activities to the public." By its express language, Section 663-1.54 applies only to owners or operators of businesses "providing recreational activities to the public." The Standing Committee that drafted Section 663-1.54 stated that its purpose was to define the liability of "providers of commercial recreational activities" with respect to liability waivers. Haw. Stand. Comm. Rep. No. 1537, in 1997 Senate Journal, at 1476. Thus, Section 663-1.54 applies to invalidate the Release as to the negligence claims against PADI only to the extent it is a "provider[] of commercial recreational activities," as contemplated by the statute.

As discussed above, PADI is an accrediting and diver training organization that develops and designs training courses and related educational materials for recreational scuba diving. (PADI CSF, Hornsby Decl. ¶ 3.) Plaintiff does not contend that

21

PADI operates any business in Hawaii under its own name, or that
it has any employees here. (Opp'n at 12.) Nevertheless, Plaintiff
asserts that PADI provides recreational activities to the public
in Hawaii by virtue of the fact that local providers conduct
PADI-developed and advertised diving programs. (Id.)
Specifically, Plaintiff points to PADI's "Discover Local Diving"
and "Discover Scuba Diving" programs. Both are advertised to the
public on PADI's website, which solicits customers to "ask the
local PADI dive shop" for them. (Pl.'s CSF, Exs. H & K.)
Plaintiff argues that these two offerings are not training
courses but, rather, programs intended to provide introductory
dive experiences. (Opp'n at 13-14.) Thus, Plaintiff asserts, PADI
is in the business of providing recreational activities to the
public. The Court disagrees.

While it is true that PADI develops and markets
training courses, certification programs, and introductory dive
programs, PADI does not itself provide any of these services to
the public. Rather, individual diving instructors and dive
centers may become members of PADI and thereby use the PADI logos
and trademarks and offer PADI-developed and approved diving
courses and excursions. (PADI CSF, Hornsby Decl. ¶ 3.)

Moreover, pursuant to the Membership Agreement between
PADI and its members, except as to PADI's role in requiring
members to abide by PADI standards in order to maintain

certification, PADI has "no control over or involvement with [the member] facility's day-to-day operations and activities and bears no responsibility for the same." (PADI CSF, Hornsby Decl., Ex. A.) PADI has no right to hire or fire the employees of HSS (a certified dive shop), it does not pay wages or salaries to such employees, does not own, operate, or control any of the vessels used by HSS in its operations, and does not supply HSS with any equipment. (<u>Id.</u> ¶¶ 9d-9k.) Pursuant to the Membership Agreement, PADI may conduct Quality Management Reviews if it becomes aware of a member possibly failing to follow PADI training standards; however, PADI's only recourse should it find that a member has in fact failed to meet PADI standards is to counsel, retrain, or expel the member after the fact. (<u>Id.</u> ¶ 9l.)

There is simply no evidence that PADI itself is in the business of actually *providing* (rather than developing and marketing) recreational diving excursions to the public. Rather, PADI operates as a professional organization to which businesses who themselves do offer such recreational activities may apply for membership. Because the Court finds that PADI is not an "owner or operator" of "a business providing recreational activities to the public," the Court concludes that Section 663-1.541 does not apply to limit the Release as to PADI.

As discussed above, pursuant to the Hawaii Supreme Court's decision in <u>Courbat</u>, liability waivers are valid and

enforceable in Hawaii unless they are found to violate a statute, to be contrary to the public interest, or to be gained through inequality of bargaining power. 141 P.3d at 438. Here, the Court has found that, as to PADI, the Release does not violate any applicable statute.

Plaintiffs do not assert that the Release was an adhesion contract or otherwise obtained because of unfair bargaining power. Indeed, the Hawaii Supreme Court has stated that "[i]n the context of a recreational sport or adventure activity, freely undertaken for pleasure, 'coercive bargaining' and 'an absence of alternatives' are terms that hold little meaning." Id. at 439. Further, the Release is not contrary to any public policy. Exculpatory clauses intended to limit liability for gross negligence or willful misconduct are prohibited as violative of public policy in Hawaii, see id. at 439; however, the Release does not purport to waive claims based upon gross negligence. Moreover, because exculpatory provisions are not favored by the law and strictly construed against parties relying on them, broad exculpatory language like that contained in the Release here is "construed to limit the waiver's scope to simple negligence claims," and to exclude claims of gross negligence. Id. Thus, under the factors articulated in Courbat, it appears the Release is valid as to PADI.

The Release waives all of Plaintiff's claims for

liability as against PADI "for personal injury . . . or wrongful death, however caused, including but not limited to product liability or the negligence of the released parties, whether passive or active." (PADI CSF, Ex. E.) As discussed above, the Release does not waive Plaintiff's claims based upon gross negligence; however, it does waive all other claims Plaintiff may have against PADI arising out of the scuba diving accident. Because the Court concludes that the Release is valid and enforceable as to Plaintiff's claims against PADI, the Court finds that Plaintiff has effectively waived her claims against PADI sounding in negligence and vicarious liability. Summary judgment in PADI's favor is therefore appropriate as to Counts I, III, and IV. Count II, Plaintiff's claim for gross negligence against PADI, remains, as PADI does not seek summary judgment as to that claim. (Reply at 4.)

## II.  Plaintiff's Vicarious Liability Claims

Finally, even assuming the Release does not extend to Plaintiff's vicarious liability claims against PADI (Counts III and IV), the Court finds in the alternative that these claims nevertheless fail as a matter of law on their merits. Plaintiff brings claims for vicarious liability as against Defendant PADI for the acts of Defendants HSS and Smith based on the theories of apparent agency and maritime joint venture. (See FAC.)

### A.  Apparent Agency

First, as to Plaintiff's claim based upon a theory of agency, as discussed above, there is simply no evidence to suggest that PADI had actual or even apparent authority over the actions of Defendants Smith or HSS in this case. See State v. Hoshijo, 76 P.3d 550, 561 (Haw. 2003) ("An agency relationship may be created through actual or apparent authority."). To establish actual authority, there must be "a manifestation by the principal to the agent that the agent may act . . ., and may be created by express agreement or implied from the conduct of the parties or surrounding circumstances.' Id. (quoting State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 978 P.2d 753, 763 (Haw. 1999)). In comparison, "[a]pparent authority arises when 'the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he was purported to have.'" Cho Mark Oriental Food, Ltd., v. K&K Int'l, 836 P.2d 1057, 1061 (Haw. 1992). The focus in apparent authority is not on the intention of the alleged principal or the alleged agent, but instead on "whether a third party relies on the principal's conduct based on a reasonable belief in the existence of such a relationship." Id. at 1062.

Plaintiff does not claim that PADI had actual authority over HSS or Smith, but nevertheless asserts that there was an apparent agency relationship between them. Specifically, Plaintiff states that she believed that HSS and Smith were agents

of PADI. (Pl.'s CSF, Hambrook Decl. ¶¶ 3, 7.) The Court therefore turns to whether this belief was reasonable. See Cho Mark, 836 P.2d at 1062. Plaintiff cites the following evidence to demonstrate the reasonableness of her asserted belief that Defendants HSS and Smith were agents of PADI: PADI allows HSS and Smith to use its name and logo, PADI's online marketing "gives the impression that its head office in California and a network of scuba instructors and dive shops in Hawaii and elsewhere are all part of one highly organized, interconnected and unified enterprise," and Plaintiff and her family (on a recommendation from their diving instructor in Canada) specifically searched for a PADI Dive Center when planning to dive in Hawaii. (Opp'n at 24.)

As an initial matter, the focus of apparent authority is dependent on representations from the principal (here, PADI) to the third party (Plaintiff). Shahata v. W Steak Waikiki, Civ. No. 09-00231, 2010 WL 3905177, at *19 (D. Haw. Sept. 24, 2010) (citing Harris v. Adolph, 484 F. Supp. 372, 384 (D. Haw. 1980)), aff'd sub nom. Shahata v. W Steak Waikiki, LLC, 494 F. App'x 729 (9th Cir. 2012). Thus, where there are no representations between the principal and the third party, there can be no apparent authority. Id. Here, as to the alleged statements made by Plaintiff's previous scuba instructor that Plaintiff should only use PADI certified dive guides and dive centers, these are not

statements made by PADI to Plaintiff and, thus, cannot provide a basis for a finding of apparent authority.

As to the use of PADI's logos and trademarks by HSS and Smith, and PADI's online advertising of its certification and diving programs, it is true that the required manifestations (either acts or statements) by the principal of apparent authority may be made to the community generally through signs or advertising. See Restatement (Second) of Agency § 27 (1958). Importantly, however, a plaintiff who purports to rely upon such manifestations must have actually seen the advertisements for apparent agency to exist. See id., Comment (b). Here, Plaintiff has provided no evidence that she actually viewed and relied upon PADI's online advertisements. Plaintiff states in her declaration that, based upon the recommendation of her initial diving instructor, she specifically "searched for a PADI facility" in Hawaii when she decided to go diving in Kona. (Pl.'s CSF, Hambrook Decl. ¶¶ 2-3.) Plaintiff does not state, however, that she viewed PADI's online advertising and formed a belief, based on the content of those advertisements, that HSS and Smith were PADI's agents. (See id.) Thus, Plaintiff cannot rely upon the representations in PADI's online advertisements as a basis for her claim of apparent agency.

Further, even were there evidence that Plaintiff did view and rely upon the online advertisements, the Court finds

that the use of the PADI logos by HSS and Smith and the content of the online advertisements simply cannot support a finding that Plaintiff had a good faith, reasonable belief that HSS and Smith were agents of PADI. As discussed above, while it is true that PADI develops and markets training courses, certification programs, and introductory dive programs, PADI's advertising directs customers to "contact your local PADI Dive Center" in order to access any of these courses or programs. (<u>See, e.g.</u>, Pl.'s CSF, Ex. K.) Nowhere does PADI indicate that the PADI organization exercises such control over these local shops and instructors that they may be reasonably characterized as its agents. (<u>Id.</u>; <u>see also</u> PADI CSF, Hornsby Decl. ¶ 3.)

Moreover, even if Plaintiff's belief that HSS and Smith were PADI's agents were reasonable, Plaintiff still had an obligation to ascertain for herself the scope of Smith and HSS's authority. <u>See</u> <u>Cho Mark</u>, 836 P.2d at 1063 (stating that a person dealing with a supposed agent "has a duty to ascertain for himself the fact and scope of agency"). There is no evidence in the record that Plaintiff made any attempt to do so here. Even a cursory attempt at research into the issue would have revealed to Plaintiff that PADI is simply a professional organization and certifying entity, with numerous independently operating members. Indeed, Plaintiff, her husband, and her son had all themselves received PADI scuba diving certifications and should therefore

have been fully aware that such a certification did not render them agents of, or under the control of, PADI with respect to their diving activities. (<u>See</u> PADI CSF, Exs. B, C, D (PADI Certification Cards).) The Court therefore cannot conclude that Plaintiff reasonably believed that HSS and Smith had the authority to act on PADI's behalf in undertaking the dive tour at issue in the instant case. The Court therefore concludes that, even were the liability Release ineffective as to this claim, Plaintiff's vicarious liability claim based upon a theory of agency (Count III of the First Amended Complaint) fails as a matter of law on its merits.

**B.    Maritime Joint Venture**

As to Plaintiff's other vicarious liability claim premised upon an alleged maritime joint venture between PADI, HSS, and Smith, the Court finds that this claim must likewise fail. The theory of joint venture has been recognized by courts in admiralty. <u>See, e.g.</u>, <u>Sasportes v. M/V Sole de Copacabana</u>, 581 F.2d 1204, 1208 (5th Cir. 1978). Joint ventures "involve two or more parties combining their efforts or resources in the conduct of a venture for an expected profit, with each having some right of control." <u>Cashman Equipment Corp. v. Trans Caribbean Transport Co.</u>, 1996 WL 626294 at *3 (E.D. La. Nov. 20, 1996 (citing <u>Sasportes</u>, 581 F.2d at 1208); <u>see also</u> <u>Sutton v. Earles</u>, 26 F.3d 903, 913 (9th Cir. 1994) ("[J]oint control is part of the

doctrine of joint venture."). Moreover, joint ventures typically involve evidence of "a common business, financial or pecuniary interest among the [alleged members of the joint venture] with regard to the voyage." Sutton, 26 F.3d at 213.

Here, as discussed above, there is simply no evidence that PADI had the type of control over, and profit-sharing relationship with, HSS and Smith required for a finding of a maritime joint venture. PADI does not share in the profits or losses of HSS or Smith, and PADI has no right to share in the fees charged by HSS to its customers for recreational dives, including those fees paid by Plaintiff for the dive at issue here. (PADI CSF, Hornsby Decl. ¶ 9c.) Further, PADI has no right to hire or fire HSS employees (including Smith), does not pay wages or salaries to HSS employees, does not own or operate any of the vessels used by HSS in its operations, does not supply HSS or Smith with any equipment, and has no ability or right to control HSS or Smith's operation or maintenance of any vessels. (Id. ¶¶ 9d-9k.) Indeed, the Membership Agreements between Smith and PADI and between HSS and PADI both expressly state that "PADI has no control over or involvement with my facility's day-to-day operations and activities and bears no responsibility for the same." (Id., Ex. A.) Thus, there is simply no evidence to suggest that a joint venture existed between HSS, Smith, and PADI. The Court therefore concludes that, even were the liability release

ineffective as to this claim, Count IV of the First Amended Complaint would nevertheless fail as a matter of law on its merits.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant PADI Americas, Inc. and PADI Worldwide Corporation, both dba Professional Association of Diving Instructors' Motion for Partial Summary Judgment (Doc. No. 59,) and DENIES Plaintiff's Counter-Motion for Partial Summary Judgment (Doc. No. 99). The Court grants judgment in the PADI Defendants' favor as to Counts I, III, and IV of the First Amended Complaint. Count II remains as against the PADI Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 2, 2015



_____
Alan C. Kay
Senior United States District Judge

Hambrook v. Smith et al., Civ. No. 14-00132 ACK BMK, Order Granting Defendant PADI's Motion for Partial Summary Judgment and Denying Plaintiff's Counter-Motion for Partial Summary Judgment.