IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SANDRA LEE HAMBROOK, individually, as Personal Representative of the Estate of William Joseph Savage, deceased, and as Personal Representative for the benefit of Chelsea Savage and Nicolas Savage,<br><br>        Plaintiff,<br><br>    vs.<br><br>JAY J. SMITH; DENNIS A. McCREA; HAWAIIAN SCUBA SHACK S-22840; PADI AMERICAS, INC. and PADI WORLDWIDE CORPORATION, both dba Professional Association of Diving Instructors,<br><br>        Defendants. | Civ. No. 14-00132 ACK-KJM |

## ORDER REGARDING MOTIONS IN LIMINE

For the following reasons, the Court GRANTS Plaintiff's Motion in Limine No. 1 to Bar Undisclosed Cause of Death Opinions by Defense Expert Dr. Lindell Weaver, ECF No. 234; and DENIES Smith and HSS's Motion in Limine No. 1 Re: Exclusion of Testimony and Evidence Related to Future Economic Loss and Motion in Limine No. 2 Re: Exclusion of Testimony of Robert Male, Ph.D., along with the joinders filed by McCrea and PADI, ECF Nos. 237-38, 252-53.

# BACKGROUND[1]

This is an admiralty case brought by Plaintiff Sandra Hambrook, individually, as Personal Representative of the Estate of William Joseph Savage, deceased, and as Personal Representative for the benefit of her children, Chelsea Savage and Nicolas Savage, ("Plaintiff"), arising out of a diving accident resulting in the death of Hambrook's husband, William Joseph Savage ("decedent").  Plaintiff filed her First Amended Complaint on April 7, 2015 against Defendants Jay Smith, Dennis McCrea, Hawaii Scuba Shack S-22840 ("HSS"), PADI Worldwide Corporation and PADI Americas, Inc., both dba Professional Association of Dive Instructors, (collectively, "PADI") (all, collectively "Defendants").[2]  The claims remaining in Plaintiff's First Amended Complaint are (1) negligence as against Smith, McCrea, and HSS; and (2) gross negligence against all defendants.[3]

---

[1]    The facts as recited in this Order are for the purpose of disposing of the current motions and are not be construed as findings of fact that the parties may rely on in future proceedings.

[2]    Defendant PADI Americas, Inc. owns the trade name Professional Association of Diving Instructors, and Defendant PADI Worldwide Corporation is the parent company of PADI Americas.

[3]    On June 2, 2015, the Court granted PADI's Motion for Partial Summary Judgment as to Plaintiff's count for negligence

(continued . . . )

On December 22, 2015 and December 23, 2015, respectively, Defendant McCrea and Defendants Smith and HSS filed counterclaims against Plaintiff Sandra Lee Hambrook, individually, for equitable subrogation, contribution, and or indemnity.  ECF Nos. 165-1, 166-1.[4] [5]

On May 31, 2016, Plaintiff filed one motion in limine: (1) Motion in Limine No. 1 to Bar Undisclosed Cause of Death Opinions by Defense Expert Dr. Lindell Weaver.  ECF No. 234.

On May 31, 2016, Defendants Smith and HSS filed nine motions in limine: (1) Motion in Limine No. 1 Re: Exclusion of Testimony and Evidence Related to Future Economic Loss; (2) Motion in Limine No. 2 Re: Exclusion of Testimony of Robert Male, Ph.D.; (3) Motion in Limine No. 3 Re: Exclusion of Expert Testimony of Ronald Engel and Paul DiBiasio; (4) Motion in Limine No. 4 Re: Exclusion of United States Coast Guard Report Dated April 11, 2012 and United States Coast Guard Summary and Memorandum Regarding the William Savage Incident But Allow

---

( . . . continued)
against PADI and as to two vicarious liability claims raised against PADI.  ECF No. 119.

[4]     Defendant PADI also filed a counterclaim against Hambrook, but voluntarily dismissed the claim.  ECF No. 195.

[5]     For ease of reference, the Court will use the terms "Plaintiff" and "Defendant(s)" and will not include the designations of "Counterclaim Defendant" and "Counterclaim Plaintiff(s)" when referring to the parties.

Witness Statements; (5) Motion in Limine No. 5 Re: Exclusion of Testimony of Stephen Wilson; (6) Motion in Limine No. 6 Re: Exclusion of Judge Robert Browning as a Witness; (7) Motion in Limine No. 7 Re: Exclusion of Liability Insurance; (8) Motion in Limine No. 8 To Exclude Evidence Regarding Offers of Settlement or Compromise; and (9) Motion in Limine No. 9 Re: Limit of Witnesses at Trial.  ECF Nos. 237-245.

On June 1, 2016, Defendants McCrea and PADI filed joinders in all nine of Defendants Smith and HSS's motions in limine.  ECF Nos. 252-59.

The parties filed their respective oppositions to the motions in limine and joinders to the oppositions on June 7, 2016.  ECF Nos.  264, 266-74, 276, 278.

A hearing on the motions was held on June 16, 2016. At the hearing, the Court granted Plaintiff's Motion in Limine No. 1; granted Smith and HSS's Motion in Limine No. 3,[6] Motion in Limine No. 7, Motion in Limine No. 8, and Motion in Limine No. 9[7]; and denied Smith and HSS's Motion in Limine No. 1, and Motion in Limine No. 5.  With respect to Smith and HSS's Motion in

_____

[6]     The Court granted Smith and HSS's Motion in Limine No. 3 insofar as ruling that Ronald Engel and Paul DiBiasio can only testify as non-retained experts as to the facts and opinions they developed while they trained the decedent and his family.

[7]     With respect to Defendants' Motion in Limine No. 9, the Court left open the possibility that rebuttal witnesses not previously named by the parties may be called at trial.

Limine No. 4, the Court deferred ruling on the admissibility of the Enforcement Summary and Coast Guard Memorandum, giving the parties the opportunity to seek admission of these exhibits at trial, but otherwise granted the motion.  The Court denied Smith and HSS's Motion in Limine No. 6 as moot.  The Court held a Daubert hearing on Smith and HSS's Motion in Limine No. 2 on June 21, 2016.  ECF No. 321.  This Order provides further explanation of the Court's ruling regarding Plaintiff's Motion in Limine No. 1 and Smith and HSS's Motion in Limine No. 1, and addresses Smith and HSS's Motion in Limine No. 2.

## DISCUSSION

### I.   Plaintiff's Motion in Limine No. 1

In her motion in limine, Plaintiff seeks to exclude undisclosed expert opinions from Defendants' expert, Dr. Lindell Weaver.  Plaintiff maintains that Defendants "plan to elicit new undisclosed opinions from Dr. Weaver . . . on new causes of death involving purported pre-existing heart conditions and use of certain medication."  Mem. in Support of Pl.'s Motion in Limine No. 1, at 2-3, ECF NO. 234.

In their opposition to the motion, Defendants do not contest that Dr. Weaver should be precluded from testifying that the decedent's heart condition or the use of medication caused his death.  McCrea and PADI Opp. to Pl.'s MIL No. 1, ECF No. 264; Smith and HSS Joinder in McCrea and PADI Opp. to Pl.'s MIL

No. 1, ECF No. 278.  Defendants note that Dr. Weaver was clear in his expert report as to the cause of the decedent's cardiac arrest (without mentioning decedent's heart condition or the use of medication), and that rescue breaths and supplemental oxygen would not have made a difference in the decedent's resuscitation.  McCrea and PADI Opp. to Pl.'s MIL No. 1 at 2-3.  However, Defendants contend that Dr. Weaver should be allowed to testify, along the lines of his deposition testimony, that "it's well known, well accepted that people with enlarged hearts are at much higher risk for sudden death."  Id. at 3.  The Court thus considers whether Dr. Weaver can so testify.

Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each expert and, for retained experts, requires that the disclosure include the experts' written reports.  Fed. R. Civ. P. 26(a)(2).  Parties must make these expert disclosures at the times and in the sequence that the court orders.  Id.  Rule 26(a)(2)(B)(i) further requires that the experts' written reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  See also Estate of Bojcic v. City of San Jose, 358 F. App'x 906, 907 (9th Cir. 2009); Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 641 (7th Cir. 2008).  The "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial;

and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." R.C. Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 271 (6th Cir. 2010) (quoting Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 n. 6 (7th Cir.1998)).

An expert may "supplement, elaborate upon, [and] explain . . . his report in his oral testimony." Durham v. Cty. of Maui, No. CIV. 08-00342 JMS/RLP, 2011 WL 2532423, at *7 (D. Haw. June 23, 2011) (alterations in original) (quoting Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc., 493 F.3d 160, 167 (D.C. Cir. 2007)). However, "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." Ciomber, 527 F.3d at 642. Thus, while an expert may expand or explain information contained in his or her report during oral testimony, the expert cannot testify as to new opinions not contained in the expert report, even if such opinions were expressed in deposition testimony. See Chiriboga v. Nat'l R.R. Passenger Corp., No. 08 C 7293, 2011 WL 2295281, at *5 (N.D. Ill. June 9, 2011) (noting that expert's "untimely statement, made during his deposition, does not provide sufficient notice to opposing counsel of the contents of the expert's report"); Scholl v. Pateder, No. 1:09-CV-02959-PAB, 2011 WL 3684779, at *3 (D. Colo. Aug. 22, 2011) (holding that failure to include certain opinions in expert

7

report was not "cured through the elicitation of deposition testimony"); see also Bojcic, 358 F. App'x at 907-08 (holding district court did not abuse its discretion by precluding expert from testifying as to opinion not provided in the expert's report); Ciomber, 527 F.3d at 642 ("After all, the parties' need for expert depositions would increase if they could use deposition testimony to provide information they should have initially included in their Rule 26(a)(2) report.").

Here, Dr. Weaver's Rule 26 report was devoid of any mention that individuals with enlarged hearts face a greater risk of sudden death. While the report states in passing that the decedent's autopsy "showed an enlarged heart," there is no discussion of a connection between this condition and a risk of death nor is there any discussion of scientific data that would support such a conclusion. Mem. in Support of Pl.'s Motion in Limine No. 1, Ex. C at 4, ECF No. 234-5. Indeed, Dr. Weaver's notation regarding the decedent's enlarged heart simply reports the results of the autopsy and is not included in the "ASSESSMENT/OPINION" section of the report. Thus, if Dr. Weaver were to testify regarding the decedent's heart condition and the risk of death, he would not be expanding or supplementing opinions expressed in his expert report, but instead would be presenting a brand new opinion. As noted above, this deficiency cannot be cured by Dr. Weaver's deposition testimony. Thus, the

Court finds Defendants did not comply with Rule 26 with respect to Dr. Weaver's opinion regarding the decedent's heart condition.

The Court turns to the appropriate sanction for Defendants' violation.  Rule 37 "gives teeth" to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed.  Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1)).  "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."  Id. at 1107.  The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  In this respect, the Court may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." Durham, 2011 WL 2532423, at *8 (citation omitted).

Defendants have failed to offer any justification for not including in Dr. Weaver's Rule 26 report that enlarged hearts are a risk factor for sudden death.  With respect to the harm, as Plaintiff points out, failure to disclose this information left Plaintiff unprepared to cross-examine Dr.

9

Weaver on this issue at his deposition.  In addition, Plaintiff's medical expert was unable to address Dr. Weaver's opinion in his rebuttal report, as the rebuttal report was submitted prior to Dr. Weaver's deposition.  Defendants' opposition does not provide any argument rebutting Plaintiff's claim of harm nor have Defendants claimed that the prejudice can be cured.  Thus, under these circumstances, the Court finds it appropriate to preclude Dr. Weaver from testifying regarding the connection between an enlarged heart and sudden death.

The Court's decision to exclude such testimony is further supported by the lack of relevance of the testimony given Dr. Weaver's causation opinion.  As Plaintiff points out, there will be no expert opinion offered at trial that the enlarged heart was a cause of death.  Thus, that an enlarged heart may be a risk factor for sudden death does not appear to be probative of any issue in the instant case.

For the foregoing reasons, Plaintiff's Motion in Limine No. 1, ECF No. 234, is GRANTED.

## II.  Smith and HSS Motion in Limine No. 1

In their first motion in limine, Smith and HSS seek to preclude testimony and evidence related to future economic loss claiming that "federal law applicable to a non-seamen precludes" such a claim.  Smith and HSS MIL NO. 1 at 2-3, ECF No. 237.

In support of their motion, Smith and HSS cite to

Miles v. Apex Marine Corp., 498 U.S. 19 (1990).  Miles, however,

does not bar the damages Plaintiff requests in the instant case.

In Miles, the Supreme Court considered whether a parent of a

seaman who died as a result of injuries aboard the respondents'

vessel could recover under general maritime law for loss of

society and lost future earnings.  Id. at 21.  Unlike the

instant case, Miles involved claims raised under the Jones Act,

which provides "an action in negligence for the death or injury

of a seaman."  Id. at 29.  The Court determined that certain

damages, including loss of society and lost future earnings were

unavailable to the petitioner because the Jones Act precluded

such recovery, through its incorporation of the Federal

Employers' Liability Act ("FELA"), which "limits recovery to

losses suffered during the decedent's lifetime."  Id. at 35.

The Ninth Circuit has determined that the "Court

clearly rested its decision in Miles on the existence of the

Jones Act's limitation on remedies—a limitation not present in

this case."  Sutton v. Earles, 26 F.3d 903, 919 (9th Cir. 1994).

On this basis, the court in Sutton affirmed the district court's

granting of loss of society damages and future earnings damages

in an action that involved general maritime law and where

neither the Jones Act nor the Death on the High Seas Act

("DOHSA") applied.  Id. at 915 ("It is true that DOHSA and the

11

Jones Act would not permit an award of such non-pecuniary damages, but DOHSA does not apply because the death was not on the high seas (beyond the three-mile limit), and the Jones Act does not apply because the decedents were not seamen."); see also Kahumoku v. Titan Mar., LLC, 486 F. Supp. 2d 1144, 1152 (D. Haw. 2007) (holding Miles did not preclude a punitive damages award to a longshoreman because "Miles is a case involving a Jones Act seaman—as opposed to a longshoreman—who had been stabbed to death by a fellow crew member").  The court in Sutton additionally "recognize[d] the continuing validity of Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573 (1974), which allowed damages for loss of society for survivors of longshoremen," Kahumoku, 486 F. Supp. at 1152, and determined that Gaudet applied not only to longshoremen, but to other non-seamen as well, Sutton, 26 F.3d at 917, 917 n. 19.

     With respect to lost future earnings, the court additionally determined that an individual's claims for such damages survived after the individual's death, pursuant to Evich v. Morris, 819 F.2d 256, 258 (9th Cir. 1987).  Sutton, 26 F.3d at 919.  In Evich, as noted by the Sutton court, the Ninth Circuit held that "where no wrongful death beneficiaries exist, the decedent's estate can receive an award for loss of future earnings because in such cases, potential problems of double recovery in the form of loss of support awards to wrongful death

beneficiaries do not arise." Id. (citing Evich, 819 F.2d at 258). The court stated that Miles did not foreclose an award of future earnings because Miles rested on the preclusion of remedies under the Jones Act, and Sutton did not involve a Jones Act claim. Id.

Because the Ninth Circuit controls in this district, the Court rejects the Defendants' contention that "[t]he holding of Miles should apply equally to seaman [sic] and non-seaman [sic]." Mem. in Support of Smith and HSS MIL No. 1, at 7, ECF No. 237-1. As determined by the Ninth Circuit in Sutton, where, as here, the Jones Act and DOHSA do not apply, Miles' bar on certain damages, including loss of society and lost future earnings, is inapplicable.

The Court must, however, also consider the issue of double recovery raised in Sutton, as Plaintiff's First Amended Complaint sought damages for both loss of future earnings and loss of support. See First Amended Complaint ¶¶ 48-50, ECF No. 89. As Plaintiff acknowledges, "[w]here, as here, wrongful death beneficiaries do exist and loss off support is claimed on their behalf . . . in addition to lost future earning capacity, the potential problem of duplicative recovery envisioned by the Sutton court does arise." Pl.'s Opp. to Smith and HSS MIL No. 1, at 3, ECF No. 266. Notably, while Smith and HSS's motion seeks a bar on testimony related to damages for future economic

13

loss, Plaintiff now stipulates that she will not "seek to recover lost future earnings on behalf of her husband's Estate *and* loss of his support and services." Id. at 5.  Instead, Plaintiff will only seek loss of support and services as a wrongful death beneficiary.  While Plaintiff would not be entitled to "damages for both loss of support and lost future earning capacity . . . [she] may seek one or the other." Voillat v. Red and White Fleet, No. C 03-3016 MHP, 2004 WL 547146, at *5 (N.D. Cal. Mar. 18, 2004); see also Sutton, 26 F.3d at 919 ("[W]here no wrongful death beneficiaries exist, the decedent's estate can receive an award for loss of future earnings because in such cases, potential problems of double recovery in the form of loss of support awards to wrongful death beneficiaries do not arise.").

As Plaintiff notes, she is entitled to loss of support damages as a wrongful death beneficiary.  See In re Air Crash Off Point Mugu, California, on Jan. 30, 2000, 145 F. Supp. 2d 1156, 1166 (N.D. Cal. 2001) (noting pecuniary damages available under maritime law include loss of support); Voillat, 2004 WL 547156, at *6 ("As wrongful death beneficiaries, plaintiffs are entitled to damages for loss of support.").  And, as recognized by the Northern District of California, "the support plaintiff[] would receive as a result of [the decedent's] death would . . . come from his future earnings." Voillat, 2004 WL 547156, at *6;

14

see also Saavedra v. Korean Air Lines Co., Ltd., 93 F.3d 547,

554 (9th Cir. 1996) (affirming loss of support award in maritime

action despite challenge to the method in which expert economist

calculated the decedent's future earnings).  Accordingly,

testimony related to the decedent's future earning capacity is

relevant here, in order to assess Plaintiff's loss of support

damages.  Therefore, Smith and HSS's Motion in Limine No. 1, ECF

NO. 237, and the joinder by McCrea and PADI, ECF No. 252, are

DENIED.

**III. Smith and HSS Motion in Limine No. 2**

Smith and HSS's second motion in limine seeks to

exclude the testimony and reports of Robert Male, Ph.D.

Specifically, Smith and HSS argue that Dr. Male should be

precluded from testifying as an expert witness because 1) a

claim for future economic loss is not available to the

decedent's estate, 2) Dr. Male is not qualified to render an

opinion on economic loss or loss of household services, and 3)

Dr. Male's opinions are based on pure speculation.  The Court

rejects the first ground for excluding Dr. Male's testimony for

the reasons discussed above in relation to Smith and HSS's

Motion in Limine No. 1.  The Court considers the other grounds

for excluding Dr. Male in turn.

Rule 702 of the Federal Rules of Evidence governs the

admission of expert testimony in the federal courts.

15

"Determining whether a witness is an expert is ordinarily within the discretion of the trial court."  McClaran v. Plastic Indus., Inc., 97 F.3d 347, 357 n.8 (9th Cir. 1996).  Rule 702 "contemplates a broad conception of expert qualifications." Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994).  Under Rule 702, an expert may testify if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]"  Fed. R. Evid. 702(a).  "A witness [] is qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; see also McDevitt v. Guenther, 522 F. Supp. 2d 1272, 1290-91 (D. Haw. 2007).  Expert testimony is admitted liberally under the Federal Rules.  See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 593-95 (1993) (noting that Federal Rule of Evidence 702, governing expert testimony, is part of the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony'" (citation omitted)).

Here, Plaintiff plans to call Dr. Male to testify as an economic expert.  Dr. Male's Rule 26 expert report provides an Income and Support Loss Evaluation and a Household Work Loss Analysis to assess economic damages raised by Plaintiff.  Smith and HSS MIL No. 2, Ex. A, at 1, ECF No. 238-3.  Thus, the Court must determine whether Dr. Male is qualified as an expert by

16

knowledge, skill, experience, training, or education to testify as to these matters.

Dr. Male is currently an economic and vocational consultant, and has held this position since 1992.  Smith and HSS MIL No. 2, Ex. D, at 1, ECF No. 238-6.  In this position, Dr. Male conducts evaluations regarding earning capacity, worklife expectancy, past and future economic losses, and costs. Id.  Dr. Male previously served (between 1987 to 2011) as a vocational expert at the Social Security Administration, Department of Health and Human Services, providing case review and testimony regarding claimants' ability to work and earning capacity.  Id.  Dr. Male's curriculum vitae also provides that he has presented and published extensively in the area of economic damages, and he is a member of several professional associations related to economic and vocational consulting, including the American Academy of Economic and Financial Experts, the National Association of Forensic Economics, and the Western Economics Association International.  Id. at 2-8.

Despite his extensive experience, Smith and HSS argue that Dr. Male is unqualified for the following reasons: 1) he does not have a degree in accounting or economics; 2) he learned through self-study; 3) the professional organizations he belongs to do not require specific qualifications; and 4) his deposition testimony was vague regarding whether he had previously been

qualified as an expert in federal court in Hawaii.  Mem. in Support of Smith and HSS MIL No. 2, at 8-13, ECF No. 238-1.  The Court rejects Smith and HSS's arguments.  As noted above, Rule 702 "contemplates a broad conception of expert qualifications." Thomas, 42 F.3d at 1269.  Indeed, the Ninth Circuit has stated that "an expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements." United States v. Smith, 520 F.3d 1097, 1105 (9th Cir. 2008) (citing United States v. Garcia, 7 F.3d 885, 889-90 (9th Cir. 1993)).  Thus, that Dr. Male does not have a degree in accounting or economics, was to a certain extent self-taught, and the fact that the professional organizations he belongs to do not require specific qualifications, do not make him unqualified as an expert.  Similarly, Smith and HSS's allegation that Dr. Male was unclear as to whether he previously had been qualified as an expert in Hawaii federal court has little bearing on whether or not Dr. Male should be qualified as an expert in the instant case, particularly given Dr. Male's extensive experience as noted in his curriculum vitae. Moreover, in her opposition to Smith and HSS's motion, Plaintiff attaches Dr. Male's Declaration, which provides that Dr. Male has been qualified 37 times by federal district courts to testify as an economic damages expert.  Pl.'s Opp. to Smith and HSS MIL No. 2, Male Decl. ¶ 2, ECF No. 267-3.  Dr. Male also

testified to this effect at the Daubert hearing and testified
that he has previously been qualified as an expert in this
district court.  In sum, based on an examination of Dr. Male's
curriculum vitae and Dr. Male's testimony at the Daubert
hearing, the Court is persuaded that Dr. Male is sufficiently
qualified to provide reliable testimony with respect to his
economic damages analysis.

        Smith and HSS additionally claim that Dr. Male's
opinions should be excluded because they are "based on
speculation and guesswork."  Mem. in Support of Smith and HSS
MIL No. 2, at 20.  In support of this argument, Smith and HSS
take issue with Dr. Male's methodology in calculating the
decedent's future earning capacity.  Essentially, Smith and HSS
argue that Dr. Male's calculations of future earning capacity
are not based on the decedent's previous earnings as reflecting
in his tax records.  Id. at 15-17.  Smith and HSS also claim
that Dr. Male assumed the "[d]ecedent had the skills of an
equipment operator, a handyman and/or contractor" but that Dr.
Male did not know whether the decedent was a licensed
contractor.  Id. at 18-19.  At the Daubert hearing, Defendants
additionally argued that in calculating the decedent's future
earnings, Dr. Male incorrectly considered dividends received by
the decedent in 2010, failed to consider the federal tax rate in

Canada as well as Alberta's tax rate, and incorrectly used the poverty rate in Canada to calculate personal maintenance.

Rule 702 provides that a witness qualified as an expert may testify "in the form of an opinion or otherwise if . . . (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." See Fed. R. Evid. 702. In Daubert, the Supreme Court proposed certain factors for evaluating the reliability of scientific expert testimony: methodology, testing, peer review and publication, error rates, and "general acceptance" in the relevant scientific community. See Daubert, 509 U.S. at 593-95.  Notably, however, the Daubert factors related to reliability "simply are not applicable to [non-scientific testimony], whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) (citation omitted); see also Allstate Ins. Co. v. Nassiri, No. 2:08-CV-369 JCM GWF, 2013 WL 2393854, at *2-3 (D. Nev. May 29, 2013) (applying the Hangarter standard to plaintiff's damages expert). Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence.  Daubert, 509 U.S. at 592 n. 10.

With respect to Dr. Male's methodology, in his Rule 26
expert report, he provides a list of data and sources relied
upon including earning records, tax returns, descriptions of the
decedent's work skills and experience (provided by Plaintiff),
research results, interview notes, and deposition testimony.
Smith and HSS MIL No. 2, Ex. A, at 4-5.  The report explains how
Dr. Male reached his conclusions regarding his damages
calculations, and provides that the calculation of the
decedent's future earning capacity was "based upon work skills
and employment at time of death, and the average wage earnings
of Handymen, Equipment Operators, and Contractors in Okotoks,
Alberta."  Id. at 6.  With respect to Dr. Male's consideration
of dividends and his calculations of the applicable tax rate and
personal consumption, Dr. Male explained in his report and
during the Daubert hearing, the bases for his conclusions as to
these issues.  Dr. Male also testified that the methods he used
are well-established in his field.  Thus, contrary to Smith and
HSS's contention, Dr. Male's Rule 26 report and testimony
reflects that he examined the evidence before him and applied
his own expertise in economic damages to come up with his
analysis and opinions.

To the extent Dr. Male's conclusions regarding the
decedent's future earning capacity conflict with Defendants'
assessment of damages, it is not for the Court to weigh evidence

or make a determination of reliability as between conflicting opinions at this stage.  See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  Rather, the Court's role is simply to assess the relevance and reliability of proposed testimony.  The objections to Dr. Male's testimony raised by Defendants go to the weight of the evidence and Defendants will have the opportunity to challenge Dr. Male's conclusions at trial.[8]

As discussed above, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a 'valid connection to the pertinent inquiry'[, and] it is reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of the relevant discipline.'"  United States v. Sandoval-Mendoza, 472 F.3d 645, 654 (9th Cir. 2006) (alterations omitted) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999)).  Here, for the reasons discussed above, including Dr. Male's qualifications, the Court is satisfied that Dr. Male meets this test.

---

[8] Smith and HSS additionally allege that a state court judge previously found Dr. Male's opinions not to be credible.  Mem. in Support of Smith and HSS MIL No. 2, at 20-21.  This allegation also goes to the weight of Dr. Male's testimony.

Accordingly, the Court DENIES Smith and HSS's Motion in Limine No. 2, ECF No. 238, and McCrea and PADI's joinder, ECF No. 253.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion in Limine No. 1 to Bar Undisclosed Cause of Death Opinions by Defense Expert Dr. Lindell Weaver, ECF No. 234; and DENIES Smith and HSS's Motion in Limine No. 1 Re: Exclusion of Testimony and Evidence Related to Future Economic Loss and Motion in Limine No. 2 Re: Exclusion of Testimony of Robert Male, Ph.D., along with the joinders filed by McCrea and PADI, ECF Nos. 237-38, 252-53.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 1, 2016.



_____
Alan C. Kay
Sr. United States District Judge

Hambrook v. Smith et al., Civ. No. 14-00132 ACK-KJM, Order Regarding Motions in Limine.